```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
---

JOHN ERIC BASENER,

                              Plaintiff,        **No. 6:15-cv-06406(MAT)**
                                                      **DECISION AND ORDER**

         -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.

---

## INTRODUCTION

Represented by counsel, John Eric Basener ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act, seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).

## PROCEDURAL STATUS

On May 2, 2012, Plaintiff protectively filed applications for DIB and SSI, alleging disability due to fibromyalgia, post-traumatic stress disorder ("PTSD"), and obesity. His applications were denied initially on July 2, 2012. A hearing was held via videoconference before administrative law judge Gregory M. Hamel ("the ALJ") on February 6, 2014, at which Plaintiff and his

attorney appeared. T.1-41.[1] Plaintiff's attorney agreed to amend the onset date from November 30, 2010, to April 9, 2011. Plaintiff testified, as did an impartial vocational expert. On March 11, 2014, the ALJ issued an unfavorable decision. T.53-64. The Appeals Council denied Plaintiff's request for review on May 6, 2015, making the ALJ's decision the final decision of the Commissioner. This timely action followed.

Plaintiff filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rule of Civil Procedure, and Defendant cross-moved for judgment on the pleadings. Neither party filed a reply brief. The Court adopts and incorporates by reference herein the comprehensive factual recitations contained in the parties' briefs. The Court will discuss the record evidence in further detail as necessary to the resolution of the parties' contentions.

For the reasons discussed below, Defendant's motion is granted, Plaintiff's motion is denied, and the Commissioner's decision is affirmed.

## THE ALJ'S DECISION

The ALJ followed the sequential evaluation process promulgated by the Commissioner for determining disability claims. The ALJ determined at step two that Plaintiff had the following severe

---

[1] Numbers preceded by "T." refer to pages from the certified administrative transcript, filed by Defendant electronically on CM/ECF.

impairments: history of Lyme disease, Sjogren's syndrome, fibromyalgia, obesity, polyneuropathy, and sleep apnea with fatigue neurosis. T.55. The ALJ concluded, however, that Plaintiff's depression, PTSD, and anxiety disorder were non-severe impairments. T.56-57. At step three, the ALJ found that Plaintiff's impairments, considered singly or in combination, did not meet or equal a listed impairment. T.58. The ALJ proceeded to find that Plaintiff has the residual functional capacity ("RFC") to perform the exertional requirements of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), except that he cannot climb ladders and similar devices, cannot work in hazardous environments, and is limited to only routine and repetitive tasks. T.58. At step four, the ALJ concluded that Plaintiff had no past relevant work. T.62. At step five, the ALJ relied on the VE's testimony to find that there are light, unskilled occupations that can be performed by a person with Plaintiff's RFC and vocational background, including the representative occupations of ticket-taker (Dictionary of Occupational Titles ("DOT") No. 344.667-010) and small product assembler (DOT No. 739.687-030). T.34, 63. As a result, the ALJ found that Plaintiff had not been under a disability during the relevant period. T.63-64.

**SCOPE OF REVIEW**

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, the district court is

limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the Commissioner employed the proper legal standards. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

## DISCUSSION OF PLAINTIFF'S CONTENTIONS

### I.   Errors in the ALJ's Credibility Assessment

Plaintiff's first contention is based on alleged errors in the ALJ's assessment of his credibility in connection with the RFC formulation.

"When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing

the credibility of the claimant's testimony in light of the other evidence in the record." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (internal and other citations omitted). First, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. See 20 C.F.R. §§ 404.1529(b), 416.929(b). If so, the ALJ must then consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record. See 20 C.F.R. §§ 404.1529(c), 416.929(c). If the claimant's symptoms suggest greater functional restrictions than are demonstrated by the objective evidence alone, the ALJ then considers such factors as the claimant's daily activities; the nature and intensity of his pain or other symptoms; the type, effectiveness, and any adverse side-effects of treatment; and other measures used to relieve pain or other symptoms. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible in light of several factors." T.60 (citing Ex. 3F: 1, 3-4, 8; Ex. 7F:10; Ex. 9F:15; Ex. 19F:13). Plaintiff argues that the ALJ misrepresented the record insofar as two out of the four exhibits

he cited in support of his credibility assessment, namely, Exhibits 9F and 19F, allegedly do not support such a conclusion. See Pl's Mem. (Dkt #7) at 13 (conceding that Exhibits 3F and 7F include evidence of Plaintiff's non-compliance with treatment recommendations but denying that such evidence is present in Exhibits 9F[2] and 19F[3]). The Court disagrees with Plaintiff and finds that both Exhibits 9F and 19F contain evidence of his non-compliance and refusal to follow treatment recommendations. See, e.g., T.330 (pain specialist doctors stated "[a]gain, we believe his perception of pain is significantly modulated by his depression and we have encouraged him to obtain the counsel of a psychiatrist"; doctors were "reluctant" to prescribe medication until he had sufficient psychiatric care in place); T.336-37 (noting that Plaintiff was not exercising because he "doesn't feel like it"; was not attempting to lose weight; was complaining of non-restorative sleep and nightmares, but was not using his CPAP machine because he felt the settings were too high; was not seeing a therapist as an adjunctive treatment for his fibromyalgia; and was requesting a prescription for Marinol, a cannabinoid medication, which the pain specialists did not think was an appropriate pharmacological treatment for his fibromyalgia); T.418

---

[2] See T.322-37, Notes from URMC Pain Treatment Center, 05/19/2011-05/17/2012.

[3] See T.407-28, Office Treatment notes of Dr. Joseph Gasparino, 06/01/2012-01/06/2014.

(Plaintiff admitted to taking "'too much' [Lyrica] earlier, but [was] now taking it as prescribed," and understands he should not overuse the medication"); T.420 (Plaintiff counseled on taking Lyrica as prescribed); T.422 (Plaintiff has not been doing physical therapy or exercising regularly, despite repeated recommendations to do so). The ALJ's observation that Plaintiff regularly did not comply with treatment recommendations is supported by the record.

In addition, as the ALJ observed, the treatment that Plaintiff did receive was largely limited to medication management during the relevant period. See, e.g., T.305 (prescriptions included cyclobenzaprine, Effexor XR, Lyrica), T.315 (noting that Plaintiff has not had injections), T.329 (listing prescriptions, including cyclobenaprine, Effexor XR), T.332 (noting that Plaintiff has not had injections), T.335 (prescriptions included cyclobenzaprine, Effexor XR, Lyrica).

The ALJ also considered Plaintiff's extensive activities of daily living. See T.56, 59-60. A claimant's daily activities are a proper factor for the ALJ to consider when assessing the credibility of his statements about his symptoms and limitations. See 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); SSR 96-7p. According to Plaintiff, the ALJ misrepresented his testimony by indicating that he drove to the store, washed dishes, and wrote and played music. See Pl's Mem. at 14. The record, however, fully supports the ALJ's finding that Plaintiff, inter alia, drove to the

store to go shopping, did laundry, washed dishes, played the guitar, wrote and recorded music, read, used the computer, played video games, and socialized with friends online and in person. See, e.g., Tr. 282 (exercised, socialized with friends online, played video games, read, played and wrote music); T.306 (played guitar); T.319 (talked to friends online and played computer games); T.368-69 (did laundry, played guitar, and played video games); T.419 (able to cook, clean, and go walking for exercise); T.469 (In May 2013, Plaintiff complained of increased pain and fatigue, and reported that "[f]or the past 5 days. . . he has been going out with friends and getting to bed aroun[d] midnight or 1 a.m. But still gets 8 hours sleep nightly"); T.11 (testified that he chatted with friends online, saw friends in person, wrote, played, and recorded music, played video games, read, did laundry, cleared dishes, and shopped when he was able). Plaintiff's own statements contain inconsistencies about his abilities that undermine his credibility. For example, Plaintiff told consultative physician Dr. Harbinder Toor and consultative psychologist Dr. Kavitha Finnity that he did not shop, socialize, or read; however, he testified at the hearing that, during a typical day, he spent a lot of time reading and drove a couple of times a week when he needed to buy food, pick up medicine, or visit friends. See T.12, 14, 368-69. "Lack of consistency is a strong indication of lack of credibility." Osorio v. Barnhart, No. 04 CIV. 7515(DLC),

2006 WL 1464193, at *7 (S.D.N.Y. May 30, 2006) (citing Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 FR 34483, 34486 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

Indeed, Plaintiff's own healthcare providers' observations support the ALJ's credibility finding; they consistently noted that he was noncompliant with their recommendations, unmotivated to follow through on the therapies and treatments they prescribed, and prone to inconsistently report symptoms to different providers. See T.319 (Plaintiff told his primary care physician Dr. Gasparino that he wanted to file for disability; Dr. Gasparino responded that "disability [was] not an option at this time" and that they would pursue different treatment options; Dr. Gasparino also noted that this topic had been addressed with Plaintiff's rheumatologist, psychiatrist, and previous primary care physician, "who all felt that his lack of motivation, rather than his fatigue was the main contributing factor to his not working"); T.248 (social worker Paul Zimmerman stated in February 2011 that Plaintiff's providers at Strong Behavioral Health and his primary care provider "indicated that all were concerned re[garding] supporting his disability claim due to his poor [treatment] compliance and the questionable nature of his reportage re[garding symptoms] to different providers at

different times. A decision was reached that [they] could not support his disability claim on mental health grounds"); T.344 (Dr. Kristin Lamontagne at URMC told Plaintiff in January 2011 that she would not fill out disability paperwork because she "[did] not feel there [was] enough physical evidence to support the medical diagnosis causing a disability" and she did "not feel that he ha[d] pursued intervention enough," including physical therapy in particular); T.492 (Plaintiff saw Dr. Tansy Deutsch for psychotherapy; informed her that in October 2012, Plaintiff said he had overused his pain medication and then went through withdrawal for a couple of days or more); T.434 (at visit on December 12, 2012, Dr. Deutsch noted that Plaintiff's disability advocate told him that "fibromyalgia is tough to win[,] may try to add PTSD as basis of claim").

Here, the ALJ's opinion makes clear why he assigned minimal weight to Plaintiff's statements. The ALJ properly "consider[ed] whether there [were] any inconsistencies in the evidence and the extent to which there [were] any conflicts between [Plaintiff's] statements and the rest of the evidence. . . ." 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). The inconsistencies cited by the ALJ as detracting from Plaintiff's credibility were legitimate factors to consider when evaluating a claimant's subjective complaints and were well supported by substantial evidence in the record.

**II.     Errors in the ALJ's Weighing of Medical Opinion Evidence**

Plaintiff's second argument pertains to the weighing of certain items of opinion evidence, namely, the opinion of primary care physician Dr. Joseph Gasparino, and the opinion of certified physician's assistant Anne Marie Arandt, PA-C ("PA-C Arandt").

**A.     Dr. Gasparino**

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (citing Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir.2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2); other citation omitted). "An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion[,]" id. (citing 20 C.F.R. § 404.1527(d)(2)), including "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a

specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." Id. (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).

According to Dr. Gasparino, Plaintiff could sit 6 hours per day, stand and walk less than 2 hours per day, would need breaks every 30 minutes or every 2 hours to get up and walk around, and that his attention and concentration would be affected "constantly" by his symptomatology. The ALJ recognized that Dr. Gasparino was a treating physician, but assigned his opinions "[l]imited weight[.]" T.61. The ALJ noted that there was "no evidence that the claimant has had any deficits in attention in concentration." Id. This reason is supported by the record, including Plaintiff's own testimony regarding his daily activities, a number of which require a fair amount of concentration (e.g., playing the guitar, and writing and recording music). In addition, consultative psychologist Dr. Finnity found, on examination, that Plaintiff's attention and concentration were "intact" and that he was able to do serial threes "accurately." T.374. In addition, Dr. Finnity found that Plaintiff's recent remote memory skills were "intact," inasmuch as he was able to recall 3 out of 3 objects immediately and 2 out of 3 objects after 5 minutes, and was able to recall 5 digits forward and 4 digits backward. T.374. For her medical source statement, Dr. Finnity opined that Plaintiff can follow and understand simple directs and perform simple tasks, can maintain

attention and concentration and a regular schedule, can learn new tasks and perform complex tasks, and can make appropriate decisions. T.375.

The ALJ also properly considered that although Dr. Gasparino's opinions were issued within one month of each other in mid-2012, they are inconsistent insofar as Dr. Gasparino opined in one opinion that Plaintiff would need breaks every 2 hours, and in the other opinion, he said that Plaintiff would need breaks every 30 minutes. As the ALJ noted, "[t]here [was] no evidence of any exacerbation in symptoms that would clarify this discrepancy" especially since Plaintiff's "physical examinations have been relatively normal. . . ." T.61. It bears noting that in the questionnaire Dr. Gasparino completed in May 2012, he did not identify *any* clinical findings to support his restrictive opinions regarding Plaintiff's limitations. See T.430. The Court also notes that less than a year earlier, on August 31, 2011, Dr. Gasparino responded negatively to Plaintiff's request to file for disability benefits, informing him that "disability was not an option" at that time. T.319. In Dr. Gasparino's subsequent office notes, there is nothing to substantiate the drastic reduction in Plaintiff's functional abilities reflected in his May 2012 opinion. For instance, on December 29, 2011, Plaintiff told Dr. Gasparino he had been experiencing "intermittent" back pain and poor sleep quality, but admitted he had not followed up on having his CPAP refitted,

and had not followed his doctors' recommendations to change his diet or increase his exercise. See T.313-14. His clinical examination that day was essentially normal except for a "long-standing" "mild" tremor in his left hand. Id. When he saw Dr. Gasparino on April 27, 2012, his physical examination was entirely unremarkable. T.303-04. On May 7, 2012, at an appointment to have Dr. Gasparino fill out disability paperwork, the doctor noted that Plaintiff "plays computer games and is on a computer for long periods of time during the day so repetitive finger and hand motions do not appear limited." T.301. The only notation Dr. Gasparaino made that day regarding his physical examination of Plaintiff was "NAD" (i.e., no acute distress). T.301. Because Dr. Gasparino's opinions were inconsistent with other substantial record evidence, as well as internally inconsistent and inconsistent with his own treatment notes, the Court finds that the ALJ did not err in according them little weight. See, e.g., Micheli v. Astrue, 501 F. App'x 26, 28 (2d Cir. 2012) (unpublished opn.) (Substantial evidence supported ALJ's decision not to accord controlling weight to treating physician's opinion, where physician's opinions were internally inconsistent and inconsistent with findings by other treating physicians and treatment reports, and claimant reported to physician and other examiners that his back pain was fairly well-controlled with medication without significant side effects).

**B.   PA-C Arandt**

PA-C Arandt was a physician's assistant in the office of Douglas Jones, M.D., Plaintiff's rheumatologist. In a report dated January 24, 2014, see T.579-83, PA-C Arandt opined that Plaintiff could only lift 5 pounds, stand and walk 2 hours per day, never make any postural movements, had limited manipulative abilities, and would have difficulties with various work tasks due to his mental health conditions. The ALJ assigned this opinion "limited weight" because it was from a "non-acceptable medical source."

A physician's assistant, under the Commissioner's regulations, is not an "acceptable medical source" but is rather classified as an "other source", and "other sources" "cannot provide medical opinions." Diaz v. Shalala, 59 F.3d 307, 313 (2d Cir. 1995) (citing 20 C.F.R. §§ 404.1513(a), 416.913(a); emphasis and footnote omitted). The Second Circuit has explained that under the Commissioner's current regulations, the ALJ "has the discretion to determine the appropriate weight to accord" an opinion from an non-acceptable medical based on all the evidence before him; "under no circumstances can the regulations be read to require the ALJ to give controlling weight to" an opinion from a provider who is not an "acceptable medical source." Diaz, 59 F.3d at 314 (chiropractor was not an "acceptable medical source" and therefore "the district court erred when it held that the  chiropractor's opinion had

'binding effect . . . in the absence of substantial evidence to the contrary'").

Nevertheless, the Commissioner has acknowledged that "information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2-3 (S.S.A. 2006). Here, however, as the ALJ found, there was "nothing to suggest that [PA-C Arandt] provided any ongoing mental health treatment . . . and thus the basis for the mental health limitations is questionable." T.61. Indeed, the record establishes that neither PA-C Arandt nor her supervising physician, Dr. Jones, provided any type of mental health treatment to Plaintiff; rather, they treated him for his rheumatological complaints. That PA-C Arandt was not a mental health specialist was a proper factor for the ALJ to consider in discounting her opinion. See 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) (more weight generally will be given to the opinion of a specialist about medical issues related to her area of specialty than to the opinion of a source who is not a specialist).

The ALJ also found that there was no evidence that Plaintiff would be precluded from postural movements,[4] and noted that his

---

[4] Nonexertional limitations include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. §§ 404.1569a(c)(vi),

-16-

daily activities, which included doing "laundry, washing dishes, and playing music," undermined such a finding. In addition, PA-C Arandt's statement that Plaintiff had limited manipulative abilities is inconsistent with Plaintiff's testimony that he plays video games and plays the guitar. See Adams v. Colvin, No. 2:14-CV-201, 2015 WL 5147075, at *26 (D. Vt. Aug. 31, 2015) (ALJ properly took into account that claimant reported playing the guitar and videogames; substantial evidence supported conclusion there was "no basis for any additional manipulative limitations" beyond limiting claimant to "simple, unskilled tasks"). The ALJ did not discount PA-C Arandt's opinion solely because she was not an acceptable medical source; rather, he considered appropriate factors such as her lack of specialization in the area of psychiatry and the substantial record evidence that was inconsistent with the limitations she assigned.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's determination was not erroneous as a matter of law and was supported by substantial evidence. Accordingly, the Commissioner's motion for judgment on the pleadings (Dkt #10) is granted, and the Commissioner's decision is affirmed. Plaintiff's

---

416.969a(c)(vi).

motion for judgment on the pleadings (Dkt #7) is denied. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

                                          **S/Michael A. Telesca**

                                          HON. MICHAEL A. TELESCA
                                          United States District Judge

Dated:    September 26, 2016
           Rochester, New York